FILED
JUL 24 2020
HEIDI PERCY
COUNTY CLERK
SNOHOMISH CO. WASH.

IN THE SUPERIOR COURT OF WASHINGTON
COUNTY OF SNOHOMISH

20 2 03800 31

| | |
|---|---|
| JAMES MOSELEY, | ) Case No. |
| Plaintiff, | ) **COMPLAINT FOR DAMAGES** |
| vs. | ) |
| STATE OF WASHINGTON; WASHINGTON DEPARTMENT OF CORRECTIONS; DR. JULIA BARNETT; LINDSAY MCINTYRE; LISA ANDERSON; MIKE OVERLAND; JON FRAIZER; JASON MILLER; ARBEN KULLOJKA; TIM THRASHER; JACK WARNER; DR. CINDY GOINES; DR. KARIE RAINER; ARNP ROBIN SMITH; | ) |
| Defendants. | ) |

COMES NOW Plaintiff James Moseley, by and through the undersigned attorney, and for claims against the above-named Defendants, alleges and avers as follows:

**I.   INTRODUCTION**

1. This is an action for damages for violations of civil rights against the state of Washington, the Washington Department of Corrections, and against several of its employees who, through their failure to afford plaintiff his statutory and Constitutional rights, have caused the plaintiff to suffer a loss of his civil rights, physical injury, as well as emotional distress.

COMPLAINT FOR DAMAGES - 1

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

## II.   PARTIES

4.   Plaintiff James Moseley was at all times relevant hereto a resident of the Monroe Correctional Complex in Monroe, Washington (MCC) and is mentally ill and had a recognized mental disability within the meaning of the Americans With Disabilities Act. Plaintiff is presently incarcerated by the Washington State Department of Corrections (DOC) in the Intensive Management Unit South at the Washington State Penitentiary (WSP).

3.   Defendant State of Washington was at all times mentioned the employer of all other defendants and the public entity that had complete control over plaintiff because he was housed in its prison system.

4.   Defendant Julia Barnett at all times relevant was the Medical Director at the Monroe Correctional Complex.

5.   Defendants Lisa Anderson, Mike Overland, Lindsay McIntyre, Dr. Cindy Goines, and advanced registered nurse practitioner (ARNP) Robin Smith were and are, at all times relevant, employees for the Washington Department of Corrections (DOC) with medical responsibility over the plaintiff and as described below are in some way responsible for the harm that the plaintiff had suffered.

6.   Defendants Jon Fraizer and Jason Miller were the correction officers assigned to Moseley during his time at Monroe Correctional Complex and as described below, are directly responsible for the harm that the plaintiff had suffered.

7.   Defendants Arben Kullojka, Tim Thrasher, and Jack Warner held supervisory responsibility over the other individually named defendants.

COMPLAINT FOR DAMAGES - 2

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

8.  Defendant Dr. Karie Rainer was the Washington Department of Corrections Director of Mental Health who was responsible for overseeing the mental health treatment program and held supervisory responsibility over Defendants Lindsay McIntyre and Dr. Cindy Goines.

9.  Each Defendant, in doing the things complained of herein, was acting under color of law and within the course and scope of his employment by the State of Washington.

10. Each Defendant is, and at all times herein mentioned was, an agent of the other and acting within the course and scope of that agency in causing the harm as herein alleged.

## III.   FACTS

11. Plaintiff James Moseley was incarcerated in the Monroe Correctional Complex (MCC) from August 2017 to February 2019. From February 19, 2019 onwards, he resides in the Washington State Penitentiary (WSP).

12. Plaintiff was illegally confined in Multiple Restraint Beds (MRB) and inappropriately housed in Intensive Management Units (IMU) by defendants in the MCC and WSP from 2017 to 2019. Plaintiff has sustained damages including physical pain, emotional distress, humiliation, mental anguish, and loss of his constitutional liberties. Particularly, the plaintiff experienced physical assaults by correctional officers in the MCC. These incidents of harm exacerbated the Plaintiff's severe distress and were detrimental to his psychological wellbeing

13. In June 2018, Dr. Julia Barnett approved the plaintiff to be placed on a Multiple Restraint Bed (MRB). Plaintiff was subjected to the use of restraint beds for 90 consecutive days. Such restraint beds tightly shackled the body of the plaintiff, where his ankles, wrists, arms, and torso were chained for extended periods. Dr. Goines established plaintiff's conditions of confinement, including clothing and bedding requirements, and instructed the watch officer not to engage in extended conversation with plaintiff. Dr. Goines authorized the use of a sleep wedge,

COMPLAINT FOR DAMAGES - 3

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

directing medical staff to remove it after they claimed plaintiff was using the wedge to self-harm. During the time in which plaintiff was subjected to the use of restraint beds, plaintiff was denied his right to an every 2 hour limb rotation. On July 31, 2018, this resulted in plaintiff urinating in his bed. Staff then denied that plaintiff be transferred to a different, sanitary bed, forcing him to lay in his own urine for an extended period of time. On August 6, 2018, plaintiff was forced to lay in his urine again for several hours due to missed limb rotations. Every seven days, ARNP Robin Smith, operating under the direction of Dr. Julia Barnett, conducted examinations of plaintiff and sent e-mails and reports containing photographs to Dr. Barnett, who subsequently extended plaintiff's bondage without conducting a physical examination of plaintiff herself until the end of this time period of restraint had nearly been reached. At the same time, other DOC employees including Lindsay McIntyre, Lisa Anderson, and Mike Overland contributed to the inhuman treatment of plaintiff. Defendants failed to provide adequate reasons for plaintiff's continued restrictions and were negligent to the plaintiff's needless suffering.

14.     For several days in September 2018, plaintiff was sent to an Intensive Management Unit (IMU) and was off MRB after Dr. Karie Rainer's approval and advice about the placement of plaintiff into maximum custody. During that period, plaintiff swallowed shower sandals due to his severe mental and emotional distress. On September 11th, plaintiff was promptly sent to a nearby medical facility to remove the sandals from inside his body. Not only a week later on September 17th, plaintiff was back on MRB upon his return from the hospital. Plaintiff told staff that his approved conditions of confinement (COC) had cleared use of the MRB, but staff has already written the order for use of the MRB prior to completing an evaluation on him upon his return from his procedure.

15.     On December 5, 2018, between 2:30 to 4:00 pm, plaintiff was subjected to a restraint chair. Corrections Officer Jon Fraizer was assigned to plaintiff as the restraint officer. A

COMPLAINT FOR DAMAGES - 4

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

hand-held camera documented Fraizer headbutting plaintiff's head using his riot helmet two separate times in a matter of minutes. DOC employees then documented plaintiff's sustained injuries with photos. Shift Commander Arben Kullojka noted that Officer Fraizer failed to adhere to the Emergency Restraint Chair placement and its policies. Kullojka also determined Fraizer's use of force was not compliant with the DOC's policies, and that Fraizer's actions required an investigation. Defendant Fraizer failed to demonstrate basic understanding of his duties as a restraint officer and to appropriately conduct his duties while assigned to the plaintiff. Defendant Kullojka failed to conclude the investigation. An expert review by a DOC HQ subject matter expert (SME) concluded that the force used by the custody officer in this encounter was inappropriate and/or excessive. In both instances, the custody officer took a small step back to generate more energy and used a clear striking motion to headbutt plaintiff, who was in a restraint chair controlled by four other custody officers.

16. On February 18, 2019, between 6 to 7 pm, plaintiff was going into his cell when Segeant Myron Ayala, Francisco Fotanez, Anthony Servedio, Savannah Heib, Cody Duke, correction officers forcibly removed him and confined him on a restraint chair. Plaintiff's hands and feet were cuffed. The officer then forced plaintiff's head in between his legs. Corrections Officer Jason Miller invasively thrusted his finger into plaintiff's mouth, pulling plaintiff's check from his mouth. In an act of desperation and self-defense, plaintiff bit Miller's fingers, attempting to stop Miller's invasive and humiliating treatment of him. Miller promptly pulled his hand and punched plaintiff in the face. Miller threw another punch, landing a second blow to plaintiff's face and causing severe swelling and a black eye. Due to the severity of the injuries, medical staff ordered 10 x-rays of plaintiff's face.

17. Plaintiff submitted a claim against the assault, exhausting the grievance process. DOC Manager Tim Thrasher and Superintendent Jack Warner notified plaintiff that Officer Miller

COMPLAINT FOR DAMAGES - 5

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

had acted reasonably by punching at him. Defendant Jason Miller humiliated and physically restrained the plaintiff and when the plaintiff responded in self-defense, attacked the plaintiff's face twice, leading to plaintiff suffering unnecessary pain and injuries to his face. Defendants Tim Thrasher and Jack Warner failed to act in fairness pertaining to the plaintiff's grievance process and to provide an appropriate response to the actions of their subordinate.

18. From February 19, 2019, Plaintiff has since been moved to the Intensive Management Unit-South at the Washington State Penitentiary. From past stays at the IMU and the current period, plaintiff has been on lockdown for 23 hours a day. The DOC has limited plaintiff's capability of outdoor recreation, substituting it with a chin up bar on the floor and a telephone. Plaintiff has been solitarily confined in his room and the lack of outdoor recreation has caused the plaintiff to experience deep emotional distress and damage to his mental health.

### IV. FIRST CLAIM FOR RELIEF

**(42 USC § 1983 – Eighth Amendment Deliberate Indifference)**

19. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 18 with the same force and effect as if such paragraphs were separately realleged in this First Claim for Relief.

20. At all times material hereto, defendants, jointly and severally, had a duty under the Eighth Amendment of the U.S. Constitution not to be deliberately indifferent to the known serious medical needs of detainees at the DOC. This duty arose from the individual defendants' capacity as agents or employees of the DOC. Because defendants had a non-delegable duty to provide medical services to detainees of the DOC, DOC and its agents and employees acted under color of law while providing these services.

21. The Washington State Department of Corrections has kept plaintiff housed in solitary confinement since he was brought under its jurisdiction in 2016, which has caused him to

COMPLAINT FOR DAMAGES - 6

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

suffer greatly and had caused plaintiff's mental illness to be exacerbated and has caused plaintiff to engage in self-harm in order to obtain any relief. Plaintiff's prolonged housing in solitary confinement by defendants has caused him to suffer from SHU syndrome.

22. Defendants failed to provide adequate mental health treatment and medical care for plaintiff, contrary to a psychologist's instructions to transfer plaintiff to the special offender unit per facility plan. The danger of self-harm was identified by the mental health providers. Despite defendants' knowledge of this risk, each of the individual defendants intentionally, or by the exercise of deliberate indifference, failed or refused to provide Moseley with the proper medical care and attention known to be necessary under the circumstances.

23. As a direct and proximate result of the actions and omissions described in this complaint, plaintiff suffered loss of his liberty, aggravation of his pre-existing mental health conditions, the onset of new mental health conditions and deprivation of the freedoms that are enjoyed by other inmates. Eleven years spent in solitary confinement has caused plaintiff to deteriorate mentally. Subsequently, plaintiff has been diagnosed with SHU syndrome, PTSD, borderline personality disorder and antisocial disorder, and severe depression, all to his damage in an amount to be ascertained according to proof at trial. Defendants subjected plaintiff to such deprivation of liberty by malice and a reckless and conscious disregard so his rights for which an award of punitive damages is warranted.

## V.  SECOND CLAIM FOR RELIEF

### (42 USC 1983 - First Amendment Violation)

24. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 23 with the same force and effect as if such paragraphs were separately realleged in this Second Claim for Relief.

COMPLAINT FOR DAMAGES - 7

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

25. Defendants' above-mentioned unlawful conduct caused plaintiff harm, because of his complaints about the manner in which he was treated in violation of the First Amendment. Defendants retaliated against plaintiff for exercising his First Amendment Constitutional Right to file grievances, antagonized plaintiff and encouraged him to kill himself.

26. As a direct, proximate and foreseeable result of defendants' retaliation, Moseley suffered the injuries described in this complaint, including bodily injuries and resulting pain and suffering, mental disorder, mental anguish, loss of ability to enjoy life, expenses of medical care and treatment, and other losses including the aggravation of pre-existing conditions. These injuries and losses are permanent and continuing, and Moseley will suffer such losses in the future.

27. Defendants depriving plaintiff of access to magazines was also a violation of his First Amendment rights and was atypical of how other inmates were treated.

28. Defendants' unlawful actions were deliberate, malicious and in conscious disregard of plaintiff constitutional rights entitled him to punitive damages.

## VI.   THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983 — Eighth Amendment – Failure to Protect)

29. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 28 with the same force and effect as if such paragraphs were separately realleged in this Third Claim for Relief.

30. The Eighth Amendment protects inmates against infliction of "cruel and unusual punishment."

31. Defendants violated the Eighth Amendment by failing to protect plaintiff's health, isolating him, failing to treat his mental health, mocking and ridiculing him and allowing him to

COMPLAINT FOR DAMAGES - 8

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

be subjected to the harm described above. Defendants also violated the Eight Amendment by housing plaintiff in closed observation cells that had no toilets or running water for several days at a time. The defendants' conduct was deliberately indifferent to plaintiff's physical and mental health amounting to cruel and unusual punishment. They have deprived plaintiff his right to be free from cruel and unusual punishment of the laws secured by the Eighth Amendment to the United States Constitution. By not protecting plaintiff from a dangerous situation and causing plaintiff to suffer from injuries without timely or adequate medical treatment, defendants acted with deliberate indifference regarding plaintiff's rights. Defendants failed to protect and prevent plaintiff from harming himself.

32. As a proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been emotionally harmed in that plaintiff has suffered humiliation, mental anguish, anxiety, mortification, loss of good health and emotional and physical distress, and has been injured in mind and body in an amount according to proof at trial

33. The actions of the individual defendants, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to punitive damages against the individual defendants in an amount sufficient to punish them and to deter others from like conduct.

## VII. FOURTH CLAIM FOR RELIEF

**(Disability Discrimination and Failure to Accommodate - ADA 42 U.S.C. § 12131 and Rehabilitation Act of 1973)**

34. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 33 with the same force and effect as if such paragraphs were separately realleged in this Fourth Claim for Relief.

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

35. Title II of ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12131.

36. The prisons comprising the Washington Department of Corrections have been recipients of federal funds and are thus covered by § 504's mandate, which requires recipients of federal monies to reasonably accommodate persons with disabilities in their facilities, program activities, and services, and reasonably modify such facilities, services, and programs to accomplish this purpose.

37. Washington State prisons are public entities within the meaning of Title II of the ADA and provide programs, services, or activities to the general public. Title II of the ADA has essentially the same mandate as Section 504.

38. At all times relevant to this action, Moseley was a qualified individual within the meaning of Title II of the ADA and met the essential eligibility requirements for the receipt of the services, programs, or activities of Washington DOC as well as the prohibitions of discrimination. Specifically, Moseley suffered from several mental impairments that "substantially limits one or more major life activities," including but not limited to "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102.

39. Under the ADA, the Washington DOC is required to ensure that mentally and/or developmentally disabled prisoners are properly identified in order to provide reasonable accommodations to those prisoners. Therefore, under the ADA, a tracking system is necessary to ensure that these disabled prisoners are properly identified. Washington DOC has no tracking or other system to ensure that mentally and/or developmentally disabled prisoners are properly identified and accommodated.

COMPLAINT FOR DAMAGES - 10

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

40. The Washington DOC knew, or should have known, that Moseley suffered from mental illness.

41. The Washington DOC was deliberately indifferent in failing to provide Moseley Moseley with reasonable accommodations and other services related to his disabilities, and denied him the rights and benefits accorded to other inmates, solely by reason of his disabilities in violation of the ADA and Rehabilitation Act.

42. Not only did defendants deny Moseley mental health treatment, they punished him and exacerbated his condition by isolating him and keeping him in solitary confinement for years at a time with no plan for his treatment other than punishment.

43. The ADA and Rehabilitation Act require that prison staff try to counsel mentally and/or developmentally disabled prisoners rather than subjecting them to the disciplinary process when they break prison rules that they do not understand.

44. Plaintiff made defendants aware of his need for a reasonable accommodation by repeatedly communicating to defendants regarding his medical condition.

45. Plaintiff was denied proper medical care and mental health care during a crisis. The Department of Corrections neglected to provide him medical treatment or monitoring during his self-harm and/or suicide attempts. This incident caused plaintiff to experience significant physical harm and emotional distress.

46. The Washington DOC failed to enforce appropriate policies and procedures to ensure the provision of necessary accommodations, modifications, and/or services to inmates with mental and/or developmental disabilities.

47. The Washington DOC failed to train and supervise the prison personnel to provide necessary accommodations, modifications, services, and/or physical access to inmates with developmental disabilities

COMPLAINT FOR DAMAGES - 11

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

48. Plaintiff was also discriminated against because of his mental illness and mental disabilities in that he was allowed to commit self-harm without intervention for long periods of time and in that when he self-harmed or threatened self-harm he was housed in observation cells that had no water or toilet, he was forcing to defecate in a grate and push his feces down the grate with his hand, for extended periods of time, sometimes more than a week.

49. As a proximate result of defendant's discriminatory actions against plaintiff, as alleged above, plaintiff has been emotionally harmed in that plaintiff has suffered humiliation, mental anguish, anxiety, mortification, loss of good health and emotional and physical distress, and has been injured in mind and body in an amount according to proof at trial.

## VIII.  PRAYER

WHEREFORE, plaintiff prays for the following relief against defendants:

A. For permanent injunction to be issued against the Washington State Department of Corrections to immediately be restrained from continuing to house plaintiff in administrative segregation, keep lock, dead lock, SHU's secure housing units, or punitive segregation;

B. For plaintiff to be released from the secure housing units in the Washington Department of Corrections;

C. For permanent injunction to be issued against the Washington State Department of Corrections and Washington State Penitentiary be immediately ordered to restrain from continuing to force inmates on the iron metal restraint tables naked and that it be ordered that the defendants must immediately stop using these outdated restraint tables and must immediately upgrade to the modern restraint beds. The defendants be ordered to no longer take the mattress off any restraint bed when placing an inmate on the restraint bed;

D. For permanent injunction to be issued against the Washington State Department of Corrections to immediately restrain from housing all mentally ill offenders in the Secure Housing

COMPLAINT FOR DAMAGES - 12

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

Units in DOC Administrative Segregation IMU's that are diagnosed with SHU Syndrome, PTSD, Schizophrenia, personality disorders, bipolar disorder, antisocial disorder, Tourette's syndrome, and attention deficient/ hyperactivity disorder, major depression, OCD, panic disorder, mentally ill and chemically addicted mental illness with substance abuse, eating disorders or any mental illness that will cause them to suffer from the effects of long term isolation and solitary confinement;

E. For it to be ordered that any and all inmates housed in administrative segregation suffering from prisoners with serious mental illness confined in SHU's or administrative segregation can only be house in Solitary confinement / administrative segregation or SHU's no longer than 60 days and then they must be transferred before the 60 day deadline to a mental health treatment facility;

F. For general and special compensatory damages against defendants in the amount of $5,000,000;

G. For punitive damages for the evil intent and callous indifference for plaintiff and against the individually named defendants in the amount of $5,000,000;

H. For reasonable attorney fees according to law or statute;

I. For jury trial on all issues triable by jury;

J. For costs of suit incurred herein; and

K. For such other and further relief as the Court may deem just.

///

///

///

///

///

COMPLAINT FOR DAMAGES - 13

DATED this 22nd day of July, 2020 at Seattle, Washington.

CIVIL RIGHTS JUSTICE CENTER PLLC

*/s/ Darryl Parker*
Darryl Parker, WSBA #30770
2150 North 107th Street, Suite 520
Seattle, WA 98133
206-557-7719
Email: dparker@civilrightsjusticecenter.com

COMPLAINT FOR DAMAGES - 14